UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY L. ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-00991-TAB-RLY |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

**I.     Introduction**

Plaintiff Mary L. Rogers appeals the Administrative Law Judge's denial of her application for disability insurance benefits and supplemental security income.  Plaintiff argues: (1) substantial evidence does not support the ALJ's decision that Plaintiff was not disabled prior to December 30, 2013, because the ALJ relied on her own layperson's analysis of the medical treatment, Plaintiff's age and date of birth, and her improper use of the Medical-Vocational Guidelines;[1] and (2) the ALJ erred by failing to summon a medical advisor to determine her onset date.  For the reasons below, the Court denies Plaintiff's brief in support of complaint. [Filing No. 24.]

---

[1] The Medical-Vocational Guidelines, commonly called the grid, are rules used by an ALJ to determine whether a plaintiff can perform work other than that previously performed.  The grid is designed to reflect "major functional and vocational patterns about jobs existing in the national economy."  3 Soc. Sec. Law & Prac. § 43:165 (Westlaw 2016).

**II.     Background**

Plaintiff applied for disability benefits and supplemental security income alleging an onset date of December 1, 2008. The claims were denied initially and upon reconsideration. After a video hearing that included testimony from a vocational expert, the ALJ concluded that Plaintiff became disabled on December 30, 2013.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [Filing No. 13-2, at ECF p. 18.] At step two, the ALJ found that Plaintiff has had the following severe impairments since her alleged onset date: plantar fasciitis; pes cavus; tarsal tunnel; calcaneal spurs; contusion/possible stress fracture; predislocation syndrome; mild arthritis of the ankles; left elbow lateral epicondylitis; generalized muscle and joint paint with some objective evidence of degeneration at the shoulder, knees, feet, and hands; generalized anxiety disorder/anxiety; and major depressive disorder. At step three, the ALJ determined that these impairments did not meet or medically equal any relevant listing. [*Id.*]

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work with the following limitations: Plaintiff can occasionally lift and carry 10 pounds; frequently lift and carry less than 10 pounds; stand and/or walk 2 hours in an 8-hour workday; sit 6-8 hours in an 8-hour workday; occasionally operate foot controls; frequently handle and finger; and has no significant limits in reaching or feeling.

The ALJ found that, mentally, Plaintiff can understand, remember, and carry out simple, routine tasks. The ALJ also found that Plaintiff maintains the capability to utilize common-sense understanding to carry out instructions; deal with several concrete variables in standardized situations; sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods; appropriately interact with supervisors, coworkers, and the

general-public; identify and avoid normal work place hazards; and adapt to routine changes in the work place. [Filing No. 13-2, at ECF p. 20-21.]

The ALJ found that Plaintiff cannot perform past relevant work with this RFC. [Filing No. 13-2, at ECF p. 27.] At step five, relying on the VE, the ALJ found that before December 30, 2013, a significant amount of work existed in the national economy for Plaintiff despite her limitations. [Filing No. 13-2, at ECF p. 28.] Although Plaintiff continued to maintain a non-disabling RFC, on December 30, 2013, the ALJ shifted Plaintiff into a higher age category that labeled Plaintiff less capable of adjusting to other work. As a result, the ALJ was able to directly apply the grid, finding Plaintiff disabled approximately two months earlier than she otherwise would have been. [Filing No. 13-2, at ECF p. 29.]

### III. Discussion

#### A. Standard of review

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ is obliged to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore*, 743 F.3d at 1123. The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

### B. *Substantial Evidence to Support the Disability Onset Date*

Plaintiff contends that substantial evidence does not support an onset date of December 30, 2013, but rather December 1, 2008. [Filing No. 24, at ECF p. 9.] Plaintiff argues that the ALJ did not rely on medical evidence and the testimony of a medical advisor to determine the onset date, but rather her own layperson's analysis of the medical treatment, Plaintiff's age and date of birth, and improper use of the grid. [Filing No. 24, at ECF p. 10.]

Plaintiff argues that the ALJ's direct application of the grid was improper because Plaintiff has nonexertional impairments. Plaintiff correctly states that the grid cannot be applied when a plaintiff has solely nonexertional limitations that substantially limit the range of jobs she can perform. *Fast v. Barnhart*, 397 F.3d 468, 471 (7th Cir. 2005). However, Plaintiff has both exertional and nonexertional impairments. When a plaintiff has both types of impairments, the ALJ must first consider only the plaintiff's exertional impairments to determine if the plaintiff fits directly into a grid rule that would find her disabled based on her RFC and vocational factors.[2] *Haynes v. Barnhart*, 416 F.3d 621, 628-29 (7th Cir. 2005). If not disabled, the grid provides a framework to identify jobs available within the plaintiff's exertional range. SSR 85-15. When using the grid as a framework, the ALJ determines under what grid rule the plaintiff would fall based on her RFC and vocational factors. 20 C.F.R. Pt. 404, Subpt. P, App. 2. The rule's "Decision" column then shows what jobs may exist for the plaintiff. *Id.* For example, a finding of "Not Disabled" suggests that there are jobs available at the plaintiff's exertional level. *Id.* The ALJ then decides if jobs can be added or precluded based on the plaintiff's nonexertional impairments, a VE's testimony, and a full consideration of all relevant facts. *Id.*

---

[2] These factors include age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Before December 30, 2013, Plaintiff was considered a "younger person" because she was under 50. [Filing No 13-2, p.27.] In this category, age does not generally affect the ability to adjust to other work, though persons 45-49 are considered more limited in this ability. 20 C.F.R. § 404.1563. Plaintiff's vocational factors and RFC did not put her directly into the grid, so the ALJ summoned a VE. Based on the VE's testimony of available jobs and Plaintiff's ability to adjust to other work, the ALJ found Plaintiff not disabled. Defendant notes that for December 30, 2013, and later, the ALJ generously shifted Plaintiff to the higher age category—closely approaching advanced age—two months before her 50th birthday. [Filing No. 30, p. 8-9]. In this category, Plaintiff's ability to adjust to other work may seriously be affected. 20 C.F.R. § 404.1563. The shift allowed Plaintiff to fit directly into a grid rule that labeled her disabled. The regulation instructs the ALJ to stop her analysis there. *Id*. Therefore, the ALJ properly used a direct application of the grid after the shift.

Plaintiff's argument relies heavily on SSR 83-20, which sets forth the factors for determining disability onset. Onset date is the first day a claimant is disabled based on the regulations. SSR 83-20. Onset date is not determined until after a finding of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir 2008). When there is no disability, there is no need to determine the onset date. *Id*. Here, Plaintiff argues for an onset date before the ALJ considered Plaintiff disabled. Before December 30, 2013, the ALJ found Plaintiff not disabled based on her RFC and the number of jobs she was capable of performing. The ALJ found Plaintiff disabled on December 30, 2013, only because she shifted Plaintiff into an age category less capable of adjusting to other work. Because the ALJ determined Plaintiff maintained a non-disabling RFC and had the ability to adjust to other work before this date, an earlier onset date would not be supported.

Plaintiff claims the ALJ lacked sufficient evidence because the ALJ made her own assessment of the medical evidence instead of summoning a medical advisor as suggested by SSR 83-20.  [Filing No. 24, at ECF p. 11-12.]  However, the *Eichstadt* court held that the ruling's use of "should," not "must" or "shall," signifies that the ALJ can call on a medical advisor at her discretion.  *Eichstadt,* 534 F.3d at 667.  Further, medical advisors are not necessary unless medical histories are incomplete and an expert is needed to develop the record.  *Henderson ex rel. Henderson v. Apfel,* 179 F.3d 507, 513 (7th Cir. 1999).  Here, the ALJ had adequate record of Plaintiff's medical history.  Therefore, a medical advisor was unnecessary.[3]

Plaintiff's argument that the ALJ did not base the onset determination on medical evidence is flawed.  SSR 83-20 states that "[m]edical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability."  The ALJ used medical evidence from Plaintiff's medical records.  The records from Plaintiff's treating physicians revealed that, despite any pain and swelling, Plaintiff retained full mobility and strength in her muscles and limbs and that she received conservative treatment.  [Filing No. 13-7 through 13-12.]  The ALJ also relied on evidence that Plaintiff continued to walk independently until just before the hearing.  [Filing No. 13-2, at ECF p. 27.]  Based on this evidence, the ALJ found that Plaintiff's restrictions on walking and standing were insufficient to preclude sedentary work before December 30, 2013.  [Filing No. 13-2, at ECF 22.]  Because the ALJ relied on these medical records in making her determination, the ALJ did not fail to use

---

[3] Although Plaintiff also argues that the ALJ's failure to summon a medical advisor itself is reversible error, this argument is undeveloped.  Plaintiff's argument consists of a single paragraph that briefly mentions two cases and provides no analysis.  [Filing No. 24, at ECF p. 15.]  This undeveloped argument is unpersuasive.  Defendant also failed to develop this issue, though this is hardly surprising given Plaintiff's truncated treatment.

medical evidence. 20 C.F.R. § 404.1512 (stating that other evidence from medical sources includes medical history). Plaintiff's argument to the contrary is flawed.

## IV. Conclusion

Plaintiff has not demonstrated that the ALJ committed reversible error. The Court denies Plaintiff's brief in support of complaint [Filing No. 24] and affirms the Commissioner's decision.

Date: 7/12/2016

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Mulvany
Patrick@mulvaneylaw.com

Kathryn E. Olivier
Assistant United States Attorney
kathryn.olivier@usdoj.gov